KOLIN TANG (SBN 279834)
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
11755 Wilshire Blvd, 15th Floor
Los Angeles, CA 90025
Telephone: (323)510-4060
Facsimile: (866)300-7367
Email:  ktang@sfmslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TSVETELIN TSONEV,<br>On Behalf Of Himself<br>And All Others Similarly Situated,<br><br>            Plaintiff,<br><br>        v.<br><br>KIA MOTORS AMERICA, INC.,<br><br>            Defendant. | CASE NO.<br><br>CLASS ACTION<br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Tsvetelin Tsonev ("Plaintiff"), by and through his undersigned counsel, brings this action on behalf of himself and all other persons similarly situated, against Defendant, Kia Motors America, Inc. ("Kia" or "Defendant"), and, in support thereof, avers as follows upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon knowledge:

### NATURE OF ACTION

1.      Plaintiff brings this action individually and on behalf of the proposed class ("Class") as more fully defined below, for the benefit and protection of all current and former owners and lessees of model year 2012-2015 Kia Soul, Sorrento, Sedona, Sportage, Forte, Cadenza, Optima and Rio automobiles purchased or leased in the United States (the "Class

Vehicle(s)" or "Vehicle(s)").  As explained in more detail below, these Vehicles contain defective soy-based materials that are attractive to vermin, who repeatedly chew through the soy-based materials causing considerable damage and necessitating very expensive repairs.

2.      Plaintiff's 2015 Kia Soul has been damaged three times since he leased the Vehicle in April 2015 because of these defective soy-based materials.  Each time, the same defective soy-based materials were reinstalled in his Vehicle.  And, each time, Kia refused to cover the defect under the Vehicle's warranty.  The combined repair costs for these three incidents total nearly $9,300.  To date, Plaintiff's automobile insurer has paid these repair costs, minus the $500 deductible which Plaintiff has now paid three times ($1,500). In addition, Plaintiff has incurred over $650 in rental car charges while his Kia Soul was being repaired.

3.      Plaintiff brings this class action on behalf of himself and all other similarly situated persons to obtain injunctive relief, damages and restitution.

4.      Defendant distributed, sold, leased, serviced, and warranted the Class Vehicles that are the subject of this action.  Kia, as set forth herein, also regularly and routinely provided feedback to Kia Motors Corporation regarding the distribution, sale, lease, servicing, and warranting of the Class Vehicles, including issues plaguing the Class Vehicles such as the defect that is the subject of this action.

5.      As set forth in detail below, the Class Vehicles all contain a defect as the wiring and certain engine related components are composed of soy-based materials, which attract animals that chew through the wires and engine related components.  As a result, the Class Vehicles are repeatedly damaged, disabled, and rendered unsafe and in a condition such that they do not function properly (the "Soy-Based Materials Defect" or the "Defect").

6.      Hundreds of thousands of Class Vehicles containing the Soy-Based Materials Defect have been sold or leased in the United States.  Defendant knew or should have known that the Class Vehicles are defective, not fit for their intended purpose, and unsafe when they are driven within their normal and/or expected range of operation because of the Defect.  Nevertheless, Defendant has actively concealed and failed to disclose the Defect, both prior to and after the time of purchase or lease.

7.      Further, when presented with an opportunity to repair a Vehicle, Defendant denies the existence of the Defect, refuses to cover the necessary repairs under the Vehicle's new vehicle warranty, and merely removes the chewed Soy-Based Materials and installs identically defective Soy-Based Materials – while charging members of the Class thousands of dollars for these "repairs." By doing so, Defendant has effectively transformed the Defect into a profit center.

8.      Defendant knew that owners and lessees of the Class Vehicles would reasonably expect that the wiring and engine components in Class Vehicles at issue to operate in a predictable and expected manner during normal use, and Plaintiff and other consumers did, in fact, have precisely that expectation.

9.      Since at least 2013, Kia has known about the Soy-Based Materials Defect through internal research and industry knowledge, receipt of consumer complaints, communications with dealers and other sources including parts manufacturers, and complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA"). Despite its knowledge, Kia has failed to disclose the existence of the Defect to consumers or to provide remedies that can reduce or eliminate this unsafe and economically burdensome problem.

10.     When a Class Member presents a Vehicle for repair as a result of the Defect, Kia merely removes the gnawed materials and installs the same defective soy-based wiring and engine related components, resulting in a continuous cycle of failures. Because Kia refuses to cover the Soy-Based Materials Defect under its new vehicle warranty, Plaintiff and the members of the Class are forced to cover the financial cost of these expensive "repairs."

11.     The Defect renders the Class Vehicles unsafe and consumers have been, and will continue to be, forced to deal with unsafe conditions resulting from the Defect such as inoperative air bags, compromised steering and braking performance, loss of electrical systems, and engine failure – each of which can render the Vehicle unsafe.

12.     When airbags or the anti-lock braking systems become compromised or inoperative as a result of the Defect, this creates a substantial safety concern. "From 1987 to

2012, there were an estimated 39,976 lives saved by frontal air bags." www.nhtsa.gov/driving+safety/occupant+protection/advanced+frontal+air+bags. "ABS prevents the vehicle from skidding out of control, and four-wheel ABS allows the driver to maintain the ability to steer around hazards in emergency braking situations." https://www.aaafoundation.org/faqs-anti-lock-braking-system-abs.

13.     Had Plaintiff and other Class members known about the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid less.

14.     As a result of the Defect and Defendant's refusal to cover the Defect pursuant to the new vehicle warranty, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Defendant's conduct.

15.     This action seeks class-wide declaratory relief ordering Defendant to provide coverage for this Defect under its standard new vehicle warranty.  Plaintiff also seeks damages for himself and others in the Class (the "Damages Sub-Class") who have paid out of pocket for these repairs and incurred other consequential damages as a result of Defendant's misconduct, including its conscious effort to conceal material facts concerning the Defect during the distribution, marketing, sale, advertisement, and servicing of the Vehicles.

16.     Plaintiff and the Class assert the following nationwide claims:  (a) the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*; (b) breach of express warranty; (c) breach of implied warranty; (d) California's Unfair Competition Law ("UCL" or "Section 17200") and Business and Professions Code §§ 17200, *et seq.*; and (e) California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*  Plaintiff also asserts, in the alternative, the following claims on behalf of an Illinois Class:  (a) breach of express warranty; (b) breach of implied warranty; and (c) Illinois Consumer Fraud and Uniform Deceptive Trade Practices Act, 801 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

## PARTIES

17.     Plaintiff is, and at all times relevant to this action has been, a citizen of Illinois. In or about April 2015, Plaintiff leased a new 2015 Kia Soul for his personal use from an

authorized Kia dealer, Gerard Kia of Naperville, located in Naperville, Illinois.

18.     Kia is a Delaware corporation with its headquarters in Irvine, California, and therefore is a citizen of California.  Kia is the distributer, marketer, seller, lessor and warrantor of the Class Vehicles.  Kia is a subsidiary of non-party Kia Motors Corporation, which is a corporation based in Seoul, Korea.  A copy of the requisite affidavit pursuant to Cal. Civ. Code § 1780(d) is attached as Exhibit "A."

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

20.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do business, and currently does business, in this state and throughout this district.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Kia is a resident of this judicial district, is headquartered in this judicial district, and engages in substantial business throughout this district, and because many of the acts complained of herein emanated from or took place within this district.

## FACTUAL ALLEGATIONS

22.     This is an action brought against Kia on behalf of Plaintiff and all current and former owners and lessees of the Class Vehicles.

23.     Kia Motors Corporation designed, Kia Motors Corporation and Kia Motors Manufacturing Georgia manufactured, and Defendant distributed, sold, leased, serviced and warranted the Class Vehicles that are the subject of this action.  Upon information and belief, Defendant sold and leased, directly or indirectly through authorized dealers and other retail outlets, hundreds of thousands of Class Vehicles in California and nationwide.

### Defective Soy-Based Wiring

24.     Electrical wiring is an integral part of today's vehicles, because these vehicles contain important electrical components and systems that depend on wiring to function.  These

include important *safety* components (e.g., air bags).  Until recently, automotive wiring consisted of a conducting material (i.e., copper or other metal conductors) coated or covered with plastic.  This plastic was petroleum-based and did not attract rodents.

25.     In the past few years, several vehicle manufacturers, including Kia, began replacing the insulation covering its vehicles' wiring with soy-based insulators instead of the petroleum-based plastic ones.  Kia also began using soy-based materials to construct certain other engine-related components.  These soy-based insulated wires and engine-related components were designed to be biodegradable and therefore more "environmentally friendly" than traditional petroleum-based plastics.

26.     The electrical wiring in an automobile must remain intact so that the circuitry related thereto can connect and properly function. Wiring that is chewed and does not remain intact results in electrical circuits not being closed or completed.  This can cause arching or other electrical malfunctions.  In either case, the result is that the electrical components, which the wiring was connecting, fail to operate.

27.     The use of soy-based insulated wiring (and soy-based engine related components) is problematic because the soy-based materials attract rodents and other animals who destroy the soy-based wiring and engine components.  These animals, having been attracted by this material, literally chew through the wiring and engine related components. *See* http://www.synlube.com/IncredibleEdibleCar1.htm.

28.     The soy-based wiring and engine related components, therefore, fail to function properly during normal use and are defective in at least design, material, and workmanship because electrical circuits and other cables and the soy-based engine related components fail to operate as intended once the soy-based material is chewed.  As discussed in more detail below, this is exactly what happened to Plaintiff multiple times when the soy-based insulated wiring and engine related components next to the battery harnesses, engine covers, and positive ground cables of his 2015 Kia Soul were gnawed and destroyed, disabling the safe and normal operation of his Class Vehicle.

**Kia's Knowledge of the Defective Wiring**

29.      Kia knows about the Soy-Based Materials Defect and knew about the Soy-Based Materials Defect before Plaintiff leased his 2015 Kia Soul.   For example, a television newscast in August 2013 by WCBO 5 Cleveland, reported on the fate of car owners across the country whose vehicles equipped with soy-based insulated wiring were chewed by animals.  As that television news report explained: "Mechanic Marc Dueubber said many automakers have moved to biodegradable, soy-based wiring insulation in the past 10 years.  It won't last forever in landfills, like older plastic wiring. It's great for the environment, but even better for hungry mice and squirrels."      http://www.newsnet5.com/money/consumer/dont-waste-your-money/biodegradable-soy-based-wiring-insulation-in-some-cars-appealing-to-rodents-causing-trouble.

30.      According to another report from November 2013, at least one manufacturer is making a special tape that is supposedly mouse-repellant but is not fixing the source of the problem.      *See*   http://www.wptv.com/money/consumer/mechanics-say-soy-in-car-wiring-attracts-munching-mice-so-toyota-created-a-solution.

31.      An online search reveals numerous complaints by owners of Class Vehicles across the country who have had the same problem as Plaintiff: the soy-based wiring and engine related components have been chewed by rodents, and Kia refused to cover the repair under warranty.

32.      For example, on www.carcomplaints.com, one consumer stated: "When I purchased the KIA Soul in June 2013 I was not told that the plastic coating on the wiring is soy based - very attractive to squirrels, rodents and cats. On August 27th while dirving [sic] to work the malfunction light came on - the car had to be carried to the dealership for repairs. Only then did I receive the call that this 'not an uncommon problem' is not covered under the warranty. Plus I had to take immediate steps to prevent further damage from squirrels, rodents and/or cats as the car could burst into flames or I could be in an accident causing bodily injury or death.  At no time was this vital information shared with me prior to purchasing the car nor is it in the KIA owners manual. The only solution given is to put moth balls in and

arround  [sic] the engine - we had to put the moth balls in socks so as not to endanger a child's life. Now I cannot allow air from outside the car to come into the car due the mothball odor - and if anyone with asthma or copd [sic] gets too near the car the smell of moth balls make it very difficult for them to breathe. That happy hamster in the commercial is so happy because it knows it has its next snack.    KIA makes and sells these cars knowing if they told the consumer prior to an incident happening such as prior to purchase of the car - the cars would not be selling! I as a consumer have been wronged by the lack of the dealership sharing such vital information. The Consumer Protection Agency should not allow a car sold in the USA to have such a potentially life threatening problem! And our Highway Safety Commission needs to investigate this fully and takes steps to stop cars with soy based wire coating to be sold!"

- efox, Pensacola, FL, USA http://www.carcomplaints.com/Kia/Soul/2013/electrical/plastic coating_wiring_is_soy_based-.shtml,

33.    A similar complaint was reported on NHTSA's website on August 29, 2013: "TL* The contact owns a 2013 Kia soul. The contact stated that while driving approximately 40 mph, the check warning light illuminated. The vehicle was taken to a dealer for a diagnosis. The technician stated that the wiring coding was soy based and that animals were eating the wires. As a result, the wiring harness and the emission wiring needed to be replaced. The contact mentioned the same soy based coding wiring was used to remedy the defect and he was concerned that there would be a recurrence in the failure. The manufacturer was notified of the failure. The vehicle was repaired but the failure recurred. The approximate failure and current mileage                was                1,000."                http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.requestId=69306&referenceSearch.urlCode=BYFUG329WHM018C.

34.    Another Kia complaint dated January 8, 2016 was reported on http://ctwatchdog.com/finance/rodents-damage-cars-by-chewing-electrical-connections-tips-on-how-to-avoid-costly-repairs:

"We have a **New Kia Sportage** with less than 7,000 miles on it and it would not start one day. Tried to start but all that happened was all the dash lights came on. Did not start, called the

wrecker, had towed to the dealership where we bought the car, they called back stating that the wiring harnesses had been chewed up —- cost over $5000— which the bumper to bumper warranty did not cover of course.  The manufactures need to be held accountable for the wiring made of a **soy base**, which rodents absolutely LOVE TO CHEW ON. Also the dealerships should be held accountable for their worthless BUMPER TO BUMPER coverage which is absolutely worthless…."

35.     Another Kia customer posted the following on February 26, 2015:

"I have a 2012 Kia Sorrento.  Two weeks ago the engine light came on and the car ran really rough.  Took it to the dealer, it was squirrels who chewed the insulation on the wiring.  They fixed it and today the same problem…"   http://gotaclassaction.com/investigation-of-volkswagen-porsche-audi-over-use-of-soy-based-wiring-susceptible-to-destruction-by-vermin.[1]

36.     So many people have been looking for solutions that there are various technical service bulletins from, *inter alia*, Ford, Honda, and Toyota, instructing their technicians how to remedy chewed wiring harnesses.  http://www.consumerreports.org/cro/news/2014/04/how-to-protect-your-car-from-rodents/index.htm

**Plaintiff's Experience**

37.     Plaintiff's Vehicle has been damaged three times since April 2015 because of the Soy-Based Materials Defect.  Each time, the same defective soy-based materials were placed back in his Vehicle.  And, each time, Kia refused to cover the Soy-Based Materials Defect under the Vehicle's warranty. The combined repair costs for these three incidents total nearly $9,300.  While Plaintiff's automotive insurer has covered most of the cost of these repairs, Plaintiff has paid the $500 deductible three times ($1,500).  In addition, Plaintiff has incurred over $650 in rental car charges while his Kia Soul was being repaired.

38.     In April 2015, Plaintiff leased a 2015 Kia Soul, VIN KNDJP3A56F7170973 from Gerard Kia of Naperville, Illinois ("Gerard").  At all relevant times, he has parked his

---

[1]  See also, http://www.nbclosangeles.com/news/local/critters-could-be-causing-you-car-problems-370726971.html ("'Wow, I can't see anything, my headlights aren't coming on, and the windows didn't work either,' she says.  Her wiring harness [in her Kia] had been chewed to pieces by rodents…").

Class Vehicle in a parking garage at his apartment in Elmhurst, Illinois.

39.     The Class Vehicles also come with the New Vehicle Limited Warranty ("Warranty"). The Warranty provides for the repair/replacement of factory installed parts if they "fail to function properly during normal use."  The Warranty Coverage includes all components for 60 month/60,000 miles at no charge to the consumer. (Ex. "B" Warranty and Consumer Information Manual, at pp. 1-13.)

40.     Within the durational term of the Warranty, in or around December 2015, when the Vehicle had approximately 6,500 miles on it, Plaintiff noticed the check engine light was lit.  In response, Plaintiff made an appoint to bring the Vehicle to Gerard.  During its review of the Vehicle, Gerard determined that the wiring and wire harness on the Vehicle were damaged.  In fact, Gerard advised Plaintiff that rodents had eaten the hood insulation, wiring assembly, and wiring harness, as well as the positive and ground cables.  Gerard also advised Plaintiff that Kia would not cover this damage under the Vehicle's Warranty and told Plaintiff to submit the repair costs to his auto insurer.

41.     While his Class Vehicle was being repaired, Girard provided a 2016 Kia Soul loaner vehicle to Plaintiff.  The loaner vehicle (also a Class Vehicle) experienced the same fate, as rodents gnawed and chewed through the defective soy-based materials.

42.     On or around January 21, 2016, Plaintiff paid $1,762 for the repair ($1,262 was covered by Plaintiff's auto insurer and Plaintiff paid the $500 deductible) to his Vehicle.  The invoice from Gerald clearly relates the repair to the Soy-Based Materials Defect – "Repaired mouse damaged wiring and replaced positive cable and ground cable."  (Ex. "C" Invoice dated January 21, 2016.)

43.     Less than two weeks after receiving his "repaired" Kia Soul, Plaintiff attempted to start it in early February 2016.  The Vehicle would not start.  Plaintiff lifted the hood to discover significant rodent damage because of the Soy-Based Material Defect.

44.     Plaintiff contacted Gerard about the damage.  A representative from Gerard told Plaintiff that the Vehicle would have to be towed to the dealership.  Plaintiff had the Vehicle towed to Gerard.

45.     On or around February 8, 2016, Plaintiff received a call from the Kia Service Manager at Gerard, who confirmed damage to the engine main harness and related wiring assembly.  Plaintiff was also told that the chewed soy-based components prevented the air bags from operating and impacted the fuel line.  The Gerard representative estimated the repair would cost in excess of $3,200.

46.     Plaintiff visited the Kia dealership on or around February 8, 2016 to request a loaner vehicle. Gerard agreed to provide a loaner vehicle to Plaintiff.  Plaintiff also requested that the repair be covered under the Vehicle's warranty because of the Soy-Based Materials Defect.  Once again, Girard advised Plaintiff that Kia would not cover this damage under the Vehicle's warranty.

47.     Frustrated by Kia's inability to effectively repair the Soy-Based Materials Defect and Kia's refusal to cover the Defect under the Warranty, on February 9, 2016, Plaintiff called Kia's national customer service number in the back of the Kia warranty booklet.  During the call, Plaintiff filed an official complaint about the Defect, again requested warranty coverage for the Defect, and requested assistance to exit the Kia lease.  Kia's representative denied the existence of a defect, denied to offer warranty coverage, and indicated that Kia could not assist in terminating the lease.  Plaintiff's complaint was assigned claim number K3122600.

48.     On February 15, 2016, further frustrated by Kia's refusal to assist him in terminating the lease and fearing that he would  have to pay additional substantial sums of money for future "repairs," Plaintiff requested assistance from Gerard to exit his lease.  In response, Anthony Rainer, General Sales Manager of Gerard, indicated that he would like to help Plaintiff but Kia is the only entity that could permit Plaintiff to exit the lease. And, as discussed above, Kia refused.

49.     On February 22, 2016, Plaintiff returned to Gerard to pick up his "repaired" Vehicle.  Despite the fact that the invoice clearly relates the repair to the Soy-Based Materials Defect ("Replaced the engine main harness due to mouse damage"), Kia once again refused to cover the Soy-Based Materials Defect under its warranty. (Ex. "D" Invoice dated February 22, 2016.) So, Plaintiff submitted a second claim to his auto insurer who paid $3,573 for the

"repair."  Plaintiff paid a second $500 deductible to Gerard on February 22, 2016.

50.     Less than four weeks later, on March 16, 2016, Plaintiff's wife called him and told him that the Vehicle's air bag sensor light is on.  She also told Plaintiff that when she lifted the Vehicle's hood, she notice at least two gnawed and damaged wires.

51.     Once again, Plaintiff had the Vehicle towed to Gerard, fearing that it was unsafe to drive without operational airbags.  Gerard provided an estimated repair cost of $4,000.  Plaintiff again requested warranty coverage for the Defect.  Plaintiff also requested a non-Kia loaner vehicle (concerned that a Kia loaner vehicle would contain the same Soy-Based Materials Defect and result in additional auto insurance claims), but Gerard refused to provide one.  So, Plaintiff was forced to pay $650 for a non-Kia rental vehicle.

52.     Frustrated by the repetitive "repairs," the fact that Kia simply replaces defective parts with equally defective parts, Kia's refusal to cover the Defect under the warranty despite Plaintiff's express and repeated requests for coverage, and Kia's refusal to assist Plaintiff to exit his lease, Plaintiff returned to Gerard on or around April 30, 2016 to pick up his "repaired" Vehicle. (Ex. "E" Invoice dated April 30, 2016.) Because Plaintiff's request for warranty coverage was denied (again), the total cost of the "repair" was $3,463.  For the third time in approximately four months, Plaintiff again paid the $500 deductible and his insurer paid the remainder ($2,963).

53.     In the span of four months, Plaintiff has incurred $9,298 in charges to "repair" the Soy-Based Materials Defect.  Plaintiff's auto insurer covered $7,798 of these costs, and Plaintiff covered the remaining $1,500.  In addition, Plaintiff paid $650 in rental car expenses because of the Defect.  (Ex. "F" Summary of Charges for rentals from Enterprise)

54.     Despite the expenditure of nearly $10,000 (all of which should have been covered by Kia's warranty), Kia merely replaced the defective parts with parts that contain the same Soy-Based Materials Defect.

**KIA Refuses to Cover the Defect Under Its Warranty**

55.     Defendant has an obligation under its Warranty to "provide for the repair" of the Soy-Based Materials Defect at no cost to the customer. (Ex. B at p. 4)  Defendant boasts

about the effectiveness of the coverage provided by its Warranty on the "Welcome" page of its Manual: "You'll also be pleased by how strongly we stand behind every Kia vehicle.  The New vehicle 60 month/60,000 Miles Limited Warranty described in this manual is one of the finest available."  (Ex. "B", p. 2)

56.     Rather than abide by the terms of its express warranty and live up to its express assertion that its warranty is "one of the finest available," Kia steadfastly refuses to cover the Soy-Based Materials Defect under it warranty.  By doing so, Kia effectively transforms this Defect into another source of income to generate profits.  This is blatantly apparent by looking at Plaintiff who has been charged nearly $10,000 so far because of the Defect.

57.     All Class Vehicles are equipped with components that contain the Soy-based Materials Defect.  These components are defective in at least design and in material and workmanship under normal use because the soy-based materials attract rodents and animals that chew the components, rendering the damaged components unfit to perform their intended function.

58.     As demonstrated above, Kia does not cover the Soy-Based Materials Defect under its Warranty, despite the unambiguous statement that the warranty provides for the repair/replacement of factory installed parts if they "fail to function properly during normal use."  Kia has breached, and continues to breach, its Warranty by refusing to cover the Soy-Based Materials Defect.

**KIA's Warranty Fails of Its Essential Purpose**

59.     As demonstrated above, Kia does not actually "repair" the Soy-Based Materials Defect when a Class member has a defective part repaired.  Instead of actually replacing the defective parts with non-defective parts, Kia simply installs equally defective parts resulting in repeat failures.

60.     Even if Defendant covered the Defect repairs under the Warranty (which it does not), the Warranty would fail its essential purpose because Kia simply replaces defective parts with equally defective parts.  Accordingly, Plaintiff and the Class are entitled to alternative remedies (other than repair and replacement of the defective part with equally defective part)

including but not limited to: (1) requiring Kia to develop and implement a true repair to address the Defect; (2) permitting Plaintiff and the Class to return the Vehicles to Kia at no cost or loss to each member of the Class; and (3) requiring Kia to replace the defective parts for the lifetime of each Vehicle.

**CALIFORNIA CONTACTS**

61.     Kia is headquartered in Irvine, California.

62.     Defendant does substantial business in California, and a significant portion of the proposed nationwide Class is located in California.

63.     California hosts a significant portion of Defendant's U.S. operations, including sales, service, and financial offices.  In addition, the conduct that forms the basis for each and every Class members' claims against Kia emanated from Kia's headquarters in Irvine, California, and as set forth above is consistent with directives of Kia personnel in California and in some cases, Korea.

64.     Kia personnel responsible for customer communications are located at its California headquarters, and the core decision not to disclose the Soy-Based Materials Defect to consumers was made and implemented from there.

65.     Kia personnel responsible for managing its customer service division are located at the California headquarters.

66.     These California personnel crafted and implemented Defendant's decision to deny the existence of the Soy-Based Materials Defect when customers complained and Defendant's decision to uniformly refuse to cover the Defect under the warranty.

67.     Kia personnel responsible for communicating with dealers regarding the Soy-Based Materials Defect and whether there is warranty coverage for the Defect are also located at its California headquarters, and the decision not to inform authorized dealers of the Defect and to declare to dealers that there is no warranty coverage for the Defect was made and implemented from there.

68.     Defendant has significant contacts with the State of California, such that nationwide application of California law is appropriate.  Further, the conduct at issue in this

litigation emanated from California such that application of California law nationwide is appropriate. *See Clothesrigger, Inc., v. GTE Corp.,* 236 Cal.Rptr. 605 (1987); *Wershba v. Apple Computer, Inc.,* 110 Cal.Rptr. 2d 145 (2001).

69.     Through Kia, Plaintiff and each member of the Class are provided with a 60 month/60,000 Warranty, pursuant to which Kia was obligated to repair and/or replace defective parts at no charge (inclusive of labor).   During that Warranty period and under the terms of the express Warranty, Kia was (and is) obligated to repair the Soy-Based Materials Defect in the Class Vehicles under the terms of the express Warranty, but has failed to do so.

70.     As a result of Defendant's conduct, Plaintiff and members of the Class have suffered injury in fact and otherwise suffered damages and been harmed and will continue to be harmed in the future unless Kia is held accountable through this litigation.

71.     As a result of the Defect, the Class Vehicles' value (including, without limitation, its value at the time of purchase as well as the re-sale value) has been substantially and permanently diminished, as Plaintiff and members of the Class have not received the value for which they bargained when they purchased or leased the Class Vehicles.  Had Plaintiff and the Class been informed about the Defect prior to purchase or lease, they would not have purchased or leased the Vehicles or would have paid substantially less.

72.     Plaintiff seeks injunctive relief, actual damages, disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as defined herein.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action on behalf of himself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

74.     Plaintiff brings this action on behalf of the following class ("Class"):

> All individuals or entities in the United States who leased or purchased, not for resale, Model year 2012-2015 Class Vehicles.[2]

In the alternative, Plaintiff brings this action on behalf of the following state class

---

[2] Plaintiff reserves the right to modify the Class definition as this litigation proceeds.

("Illinois Class"):

> All individuals or entities in Illinois who leased or purchased, not for resale, Model year 2012-2015 Class Vehicles.

Excluded from the Classes are: (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered a personal injury or is alleged to have suffered personal injury as a result of the Defect; (c) any person or entity who has settled or released these same claims against Defendant as evidenced by a written release; and (d) the Judge to whom this case is assigned.

75.     Rule 23(b)(2): By uniformly and repeatedly denying requests by Plaintiff and the members of the Class for warranty coverage for the Soy-Based Materials Defect, Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

76.     Numerosity/Impracticability of Joinder:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, tens of thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

77.     Commonality and Predominance:  There are common questions of law or fact which predominate over any questions affecting only individual members of the Class.  These common legal or factual questions include but are not limited to the following:

> a.     whether the Vehicles contain the Defect;
>
> b.     whether Defendant has refused, and continues to refuse, to cover the Defect under the warranty;
>
> c.     whether Defendant engaged in a pattern of fraudulent, deceptive, and misleading conduct;
>
> d.     whether Defendant's acts and omissions violated state consumer fraud acts;

e.      whether Defendant made material misrepresentations of fact or failed to disclose material facts to Plaintiff and the Class regarding the Defect in the Class Vehicles;

f.      whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Defect in the Class Vehicles were intended to deceive the public;

g.      whether Defendant breached its express and implied warranties;

h.      whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to declaratory and equitable relief and, if so, the nature of such relief; and

i.      whether the Plaintiff and members of the Class have sustained ascertainable loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof.

78.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent. Plaintiff and members of the Class have been injured by the same Defect and the same wrongful practices in which Defendant has engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

79.     <u>Adequacy</u>:  Plaintiff is a representative that will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests which are contrary to or conflicting with the Class.

80.     <u>Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members

prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

81. In the alternative, Plaintiff seeks certification pursuant to Rule 23(c)(4) on the issues of: (a) whether the Soy-Based Materials Defect should be covered by Defendant's warranty; (b) whether Defendant breached its uniform warranty contracts with Plaintiff and the Class; and (c) whether Defendant engaged in deceptive, confusing or misleading practices in connection with the sale and warranting of the Vehicles.

## COUNT I

### DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT
### (28 U.S.C. §2201, *et seq.*)

### (On Behalf of Nationwide Class)

82. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83. Plaintiff brings this claim for relief on behalf of himself and the members of the Class.

84. An actual controversy has arisen and now exists between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other hand, concerning their respective rights and duties in that Plaintiff and the members of the Class contend that Defendant is wrongfully, uniformly, and repeatedly denying coverage for the Soy-Based

Materials Defect under its Warranty.

85.    A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiff, the members of the Class, and Defendant may ascertain their respective rights and duties with respect to Defendant's obligations under its Warranty.

<u>COUNT II</u>

<b>BREACH OF EXPRESS WARRANTY</b>

<b>(On Behalf of Nationwide Class)</b>

86.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

87.    As an express warrantor, manufacturer and merchant, Defendant had certain obligations pursuant to its Warranty to repair and replace defects.

88.    When Plaintiff and the members of the Class purchased and/or leased the Class Vehicles with the Soy-Based Materials Defect, Defendant expressly warranted under its Warranty that it would properly repair/replace factory-installed parts at no charge to the consumer if they "fail to function properly during normal use," for 60 months or 60,000 miles whichever comes first.

89.    The Soy-Based Materials Defect at issue in this litigation was present at the time of sale and/or lease to Plaintiff and members of the Class.

90.    Defendant breached the Warranty (and continues to breach the Warranty) because it wrongfully, uniformly, and repeatedly refuses to cover the Soy-Based Materials Defect under the Warranty, forcing Plaintiff and the members of the Class to cover the costly installation of replacement parts themselves.

91.    Even if Defendant covered these repairs under the Warranty, the Warranty would fail of its essential purpose because Defendant would just be replacing defective parts with equally defective parts containing the same Soy-Based Materials Defect.

92.    Plaintiff used his Class Vehicle in a manner consistent with its intended use and performed each and every duty required under the terms of the Warranty including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of

law in light of Defendant's unconscionable conduct described throughout this Complaint.

93.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

94.     In addition, Defendant received, on information and belief, numerous complaints, notice of the Defect, and requests for warranty coverage from other members of the Class.

95.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Defect that was present as of the time of sale or lease, which Defendant knew about prior to offering the Vehicles for sale or lease, and which Defendant concealed, did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable and Defendant should be estopped from pursuing such defenses.

96.     Further, any such effort by Defendant to disclaim or otherwise limit liability for the Defect is null and void because Defendant and its authorized agents, the dealers, have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the parts impacted by the Soy-Based Material Defect.

97.     As such, Defendant should be estopped from disclaiming liability for its actions.

98.     Accordingly, Plaintiff and the Class members suffered damages caused by Defendant's breach of the warranty and are entitled to recover damages as set forth herein.

## COUNT III

### BREACH OF IMPLIED WARRANTY

#### (On Behalf of Nationwide Class)

99.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

100.    Defendant is and was at all relevant times a merchant with respect to the Class Vehicles.

101.    A warranty that the Class Vehicles were in merchantable quality and condition is implied by law pursuant to California Commercial Code § 2314.

102.     Defendant impliedly warranted that the wiring in the Class Vehicles were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely, providing reliable transportation.

103.     The soy-based wiring was defective at the time they left the possession of Defendant, as set forth above. Defendant knew of this defect at the time these transactions occurred. Thus, the Class Vehicles with the defective wiring, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

104.     By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

105.     Plaintiff and the Class members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

106.     Plaintiff has used the Class Vehicle in a manner consistent with the intended use and performed each and every duty required, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

107.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

108.     In addition, Defendant has received, on information and belief, hundreds of complaints and other notices from customers advising of or inquiring about the Defect.

109.     Plaintiff has had sufficient dealings with either Defendant or its authorized dealers to establish privity of contract.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.  In addition, the Class Vehicles were sold or leased directly to Plaintiff and Class members by Defendant pursuant to dealer financing and floor plan financing arrangements, so that title directly passed from Defendant to Plaintiff and the Class members, thus establishing privity.  Notwithstanding this, privity is not required in this case because Plaintiff and the Class members are intended third-party beneficiaries of contracts between Kia and its dealers; specifically, they are intended beneficiaries of Defendant's implied warranties.

The warranty agreements were designed for and intended to benefit the ultimate consumers only.

110.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and the Class were caused to suffer economic damage. These include loss attributable to the loss of their warranty investment value, the diminished value of their Class Vehicles, and loss of use of the Vehicles, as well as the monies spent and to be spent to repair and/or replace parts subject to the Defect.

## COUNT IV

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (On Behalf of Nationwide Class)

111.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

112.    The UCL, California Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."  Defendant has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of this law.

113.    Defendant violated the unlawful prong of § 17200 by violating the CLRA, California Civil Code § 1750, *et seq*., as set forth below, and various warranty statutes, as set forth below.

114.    Defendant violated the fraudulent prong of § 17200 because the omissions regarding the Defect, including but not limited to the safety related problems with the Defect, as set forth in this Complaint, were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

115.    Defendant's acts and practices set forth in the Complaint offend established public policy and therefore constitute violations of the unfair prong of § 17200. These include, but are not limited to, Defendant's manufacture and sale of the Class Vehicles with the Defect, Defendant's failure to adequately disclose and remedy that Defect, and Defendant's misrepresentations regarding the Defect and continued use of defective materials when making so-called repairs.  Further, the harm these acts and practices cause relates to the safety of the Class Vehicles and greatly outweighs any benefits associated with those practices. Defendant's

conduct has also prevented Plaintiff and the Class from making fully informed decisions about whether to purchase or lease Vehicles containing with the Defect and/or the price to be paid to purchase or lease those Vehicles.

116.  Plaintiff has standing to pursue this claim on behalf of the Class because Plaintiff, like the members of the Class, has suffered an injury in fact, including the loss of money or property, as a result of and in reliance on Defendant's unfair, unlawful, and deceptive practices. Had Defendant disclosed the Defect prior to Plaintiff's purchase, Plaintiff would not have purchased a Class Vehicle or would not have paid as much for the Vehicle. In addition, Plaintiff has expended money and suffered a diminution in value of his Class Vehicle as a result of the Defect.

117.  All of the wrongful practices alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct impacts the safety of the Class Vehicles and is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the State of California.

118.  Plaintiff and the Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business and Professions Code § 17203 and California Civil Code § 3345, and for such other relief set forth below.

## COUNT V

### (VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT - CLRA)

### (On Behalf of Nationwide Class)

119.  Plaintiff incorporates the allegations set forth above as if fully set forth herein.

120.  Plaintiff and the Class are consumers as defined by California Civil Code § 1761(d), and the Class Vehicles constitute goods and services within the meaning of the CLRA.

121.   Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale of the Class Vehicles at issue herein to Plaintiff and members of the Class in violation of, *inter alia*, the following provisions:

   a.   Representing the goods and services have characteristics, uses, or benefits which they do not have such as that the Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Vehicles have a comprehensive warranty to repair any defects which is not the case (Cal. Civ. Code § 1770(a)(5));

   b.   Representing the goods and services are of a particular standard, quality, or grade if they are of another such as representing that the Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Vehicles have a comprehensive warranty to repair any defects which is not the case (Cal. Civ. Code § 1770(a)(7));

   c.   Advertising goods and services with the intent not to sell them as advertised such as that the Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Class Vehicles have a comprehensive warranty to repair any defects which is not the case (Cal. Civ. Code § 1770(a)(9));

   d.   Representing a transaction involves rights, remedies, or obligations that it does not have or involve such as that the Vehicles have no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Vehicles have a comprehensive warranty to repair any defects which is not the case (Cal.

Civ. Code § 1770(a)(14)); and

e.      Representing the goods and services have been supplied in accordance with a previous representation when they have not such that the Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Class Vehicles have a comprehensive warranty to repair any defects which is not the case (Cal. Civ. Code § 1770(a)(16)).

122.    Plaintiff and other Class members, in purchasing and using the Class Vehicles, did reasonably act in response to Defendant's above representations or would have considered the omitted facts detailed herein material to their purchase decision.  Plaintiff and the Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

123.    The representations regarding the Vehicles were material to Plaintiff and members of the Class.  Defendant intended that Plaintiff and Class members would rely on these representations and they did, in fact, rely on the representations.

124.    Under Civil Code § 1782(a), Plaintiff provided the required 30-day notice, on February 8, 2016, before filing the Complaint pursuant to Civil Code § 1782(d).  Following receipt of the notice, Defendant refused to provide the requested remedies to Plaintiff and the Class.

125.    Plaintiff also is entitled to recover actual or statutory compensatory/monetary damages as authorized by Civil Code §§ 1780(a)(1) and 1781(a)(1), restitution as applicable and authorized under Civil Code § 1780(a)(3), and punitive damages as authorized by Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendant's knowing, intentional, malicious, fraudulent, and unconscionable conduct; Defendant's reckless disregard of its legal obligations to Plaintiff and the members of the Class; and/or as otherwise recoverable under Civil Code § 1780(a)(4).  Plaintiff's Declaration pursuant to Cal. Civ. Code §1780(c) is attached hereto as Exhibit A.

126.    Plaintiff and the members of Class also are entitled to recover attorneys' fees

and costs pursuant to Civil Code §§ 1780 and 1781.

**COUNT VI**

**BREACH OF EXPRESS WARRANTY**

**(On Behalf of Illinois Class)**

127.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

128.     When Plaintiff and the members of the Illinois Class purchased and/or leased the Class Vehicles with the Defect, Defendant expressly warranted that it would repair/replace factory-installed parts if they "fail to function properly during normal use," for 60 month/60,000 miles at no charge to the consumer.

129.     The Defect at issue in this litigation was present at the time of sale and lease to Plaintiff and members of the Illinois Class.

130.     Defendant breached the Warranty (and continues to breach the Warranty) because it has not and cannot deliver a non-defective Vehicle to Plaintiff and the Illinois Class members even after repeated repairs and replacements of component parts.   In addition, Defendant did not (and does not) cover the expenses associated with replacing the Defect in Plaintiff's and the Illinois Class members' Vehicles. Defendant further breached the Warranty because the same defective parts were installed (and continue to be installed) in Vehicles during purported repairs.

131.     Pursuant to the Warranty, Defendant was obligated to pay to replace the defective parts, and reimburse Plaintiff and the Illinois Class members for costs incurred in replacing the defective parts.

132.     Pursuant to the Warranty, Defendant also was obligated to repair the Defect.

133.     Defendant and its authorized agents, the dealers, have failed and refused to honor the Warranty and Defendant's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

134.     Plaintiff used his Class Vehicle in a manner consistent with its intended use and has performed each and every duty required under the terms of the Warranty including

presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

135.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

136.     In addition, Defendant has received, on information and belief, hundreds of complaints and other notices from customers advising it of the Defect at issue in this litigation.

137.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit its Warranty in a manner that would exclude or limit coverage for the Defect that was present as of the time of sale or lease, which Defendant knew about prior to offering the Class Vehicles for sale, which Defendant concealed, did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable, and any such effort to disclaim or otherwise limit liability for the Defect at issue is null and void.

138.     Accordingly, Plaintiff and the Illinois Class members suffered damages caused by Defendant's breach of the Warranty and are entitled to recover damages as set forth herein.

## COUNT VII

### BREACH OF IMPLIED WARRANTY

### (On Behalf of Illinois Class)

139.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

140.     Defendant is and was at all relevant times a merchant with respect to the Class Vehicles.

141.     A warranty that the Class Vehicles were in merchantable quality and condition is implied by law pursuant to 801 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

142.     Defendant impliedly warranted that the wiring and engine related components in the Class Vehicles were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely, providing reliable transportation.

143.     The soy-based wiring and engine related components were defective at the time

they left the possession of Defendant, as set forth above. Defendant knew of this Defect at the time these transactions occurred. Thus, the Class Vehicles with the Defect, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

144.    By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

145.    Plaintiff and the Illinois Class members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

146.    Plaintiff has used the Class Vehicle in a manner consistent with the intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

147.    Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

148.    In addition, Defendant has received, on information and belief, hundreds of complaints and other notices from customers advising of the Defect.

149.    Plaintiff has had sufficient dealings with either Defendant or its authorized dealers to establish privity of contract.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles.  In addition, the Vehicles were sold or leased directly to Plaintiff and Illinois Class members by Defendant pursuant to dealer financing and floor plan financing arrangements, so that title directly passed from Defendant to Plaintiff and the Illinois Class members, thus establishing privity.  Notwithstanding this, privity is not required in this case because Plaintiff and the Class members are intended third-party beneficiaries of contracts between Kia and its dealers; specifically, they are intended beneficiaries of Defendant's implied warranties. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

150.    As a direct and proximate result of Defendant's breach of warranties, Plaintiff and the Illinois Class were caused to suffer economic damage, including loss attributable to the

loss of their warranty investment value, the diminished value of their Vehicles, loss of use, as well as the monies spent and to be spent to repair and/or replace their Vehicles.

## COUNT VIII

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND UNIFORM DECEPTIVE TRADE PRACTICES ACTS

#### (on Behalf of Illinois Class)

151.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

152.    Plaintiff and the Illinois Class members are consumers under the Illinois Consumer Fraud Act and Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

153.    Defendant engaged, and continue to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2.

154.    815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

155.    815 ILCS 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following:   "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality,

or grade… if they are not; … [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

156.     Kia represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, *inter alia*, that its Class Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Class Vehicles have a comprehensive warranty to repair any defects which is not the case.

157.     Kia provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Vehicle such as that its Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Vehicles have a comprehensive warranty to repair any defects which is not the case.

158.     Kia represented that goods or services were of a particular standard, quality, or grade, when they were of another, such as that its Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Class Vehicles have a comprehensive warranty to repair any defect which is not the case.

159.     Kia engaged in unconscionable commercial practices in failing to reveal material facts and information about the Defect, which did, or tended to, mislead Plaintiff and the Illinois Class about facts that could not reasonably be known by the consumer including but not limited to the fact that the Defect exists and that the Defect would not be covered by Kia's Warranty.

160.     Kia failed to reveal facts that were material to the transactions in light of Defendant's representations of fact, such as that its Class Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that the Defect would not be covered by Kia's Warranty.

161.     Defendant caused Plaintiff and the Illinois Class to suffer a probability of

confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct, namely that its Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Vehicles have a comprehensive warranty to repair any defects which is not the case.

162.    Defendant deliberately withheld material facts -- such as that its Class Vehicles had defective wiring and engine related components and that this defect would not be covered by Kia's Warranty -- from Plaintiff and the Illinois Class with the intent that Plaintiff and the Illinois Class members rely upon the omission.

163.    Defendant made material representations and statements of fact to Plaintiff and the Illinois Class members that resulted in Plaintiff and the Illinois Class reasonably believing the state of affairs to be other than what it actually was, such as that its Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine related components and that its Vehicles have a comprehensive warranty to repair any defects which is not the case.

164.    Defendant intended that Plaintiff and the other members of the Illinois Class members rely on their misrepresentations and omissions described above, so that Plaintiff and other Illinois Class members would purchase the Vehicles.

165.    Had Kia disclosed the omitted material or not misrepresented the characteristics of the Vehicles, Plaintiff and other members of the Illinois Class would not have purchased or leased the Vehicles or would have paid less for them.

166.    The foregoing acts, omissions and practices proximately caused Plaintiff and the other members of the Illinois Class to suffer actual damages in the form of, *inter alia*, out of pocket costs and diminution in value of the Vehicles.

167.    Defendant's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiff and the Illinois Class Members.

168.    As a result of this wrongful conduct, Plaintiff and the Illinois Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages,

1    punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

2        169.    Defendant's conduct was unfair as offensive to public policy, unscrupulous,

3    unethical and immoral, and caused substantial injury to consumers.

4        170.    As a direct and proximate result of Defendant's deceptive, misleading, unfair,

5    or unconscionable practices, as set forth above, Plaintiff and the other Illinois Class members

6    sustained substantial and ascertainable damages in an amount to be determined at trial,

7    including interest on all liquidated sums.

8                        **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the Class

10   defined herein, prays for judgment and relief as follows as appropriate for the above causes of

11   action:

12       A.    An Order certifying this case as a class action and appointing Plaintiff and his

13             counsel to represent the Class;

14       B.    A declaration that the Soy-Based Materials Defect is covered by the terms of the

15             Defendant's Warranty;

16       C.    A temporary, preliminary, and/or permanent Order for injunctive relief: (1)

17             requiring Defendant to immediately cease its wrongful conduct as set forth

18             above; (2) enjoining Defendant from continuing to misrepresent and conceal

19             material information and conduct business via the unlawful, unfair, and

20             deceptive business acts and practices complained of herein; (3) requiring

21             Defendant to undertake an informational campaign to inform members of the

22             general public as to the wrongfulness of Defendant's practices; and (4) requiring

23             Defendant to pay Plaintiff and all members of the Class the amounts paid and

24             other costs related to the Soy-Based Materials Defect;

25       D.    Restitution and disgorgement of all amounts obtained by Defendant as a result

26             of its misconduct, together with interest thereon from the date of payment, to the

27             victims of such violations;

28       E.    All recoverable compensatory and other damages sustained by Plaintiff and the

Class;

F.      Actual and/or statutory damages for injuries suffered by Plaintiff and the Class

        and in the maximum amount permitted by applicable law;

G.      Statutory pre-judgment and post-judgment interest on any amounts;

H.      Payment of reasonable attorneys' fees and costs; and

I.      Such other and further relief as the Court may deem necessary or appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  June 1, 2016                    By: s/Kolin Tang_____
                                        Kolin Tang (SBN279834)
                                        SHEPHERD, FINKELMAN, MILLER
                                          & SHAH, LLP
                                        11755 Wilshire Blvd, 15th Floor
                                        Los Angeles, CA 90025
                                        Telephone: (323)510-4060
                                        Facsimile: (866)300-7367
                                        Email:  ktang@sfmslaw.com

                                        JAMES C. SHAH (SBN 260435)
                                        NATALIE FINKELMAN BENNETT
                                        SHEPHERD, FINKELMAN, MILLER
                                          & SHAH, LLP
                                        35 East State Street
                                        Media, PA 19063
                                        Telephone: (610) 891-9880
                                        Facsimile: (866) 300-7367
                                        Email: jshah@sfmslaw.com
                                                nfinkelman@sfmslaw.com

                                        JEFFREY GOLDENBERG
                                        GOLDENBERG SCHNEIDER, LPA
                                        One West Fourth Street, 18th Floor
                                        Cincinnati, Ohio 45202
                                        Telephone:  (513) 345.8291
                                        Facsimile:   (513) 345.8294
                                        Email:  jgoldenberg@gs-legal.com

                                        *Attorneys for Plaintiff and*
                                        *the Proposed Class*